## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KEVIN JONES and JANET JONES, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>       v.<br><br>LUBRIZOL ADVANCED MATERIALS, INC. and CHARLOTTE PIPE AND FOUNDRY COMPANY,<br><br>                    Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Through the undersigned counsel, Plaintiffs Kevin and Janet Jones ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this class action complaint against Defendants Charlotte Pipe and Foundry Company ("Charlotte") and Lubrizol Advanced Materials, Inc. ("Lubrizol;" together with Charlotte, "Defendants").  On personal knowledge of their own circumstances and upon investigation and information and belief of their counsel, Plaintiffs aver the following:

### INTRODUCTION

1.      Defendants design, test, manufacture, advertise, sell, warrant and distribute chlorinated polyvinyl chloride ("CPVC") pipe and fitting plumbing systems under the brand name FlowGuard Gold® ("FlowGuard" or the "Plumbing System") throughout the United States for installation in homes and other structures.

2.      Defendants market and warrant that the Plumbing System is tough and reliable, and meets industry standards.  Defendants tout that the Plumbing System is the "most well-

established non-metallic piping product[] in the market" and that "millions of homes and businesses around the world trust" FlowGuard.[1]  Defendants provided a reasonable expectation to consumers and the industry that the Plumbing System would be durable and useful for an extended period of time.

3.      Contrary to Defendants' advertising and representations, however, the Plumbing System becomes brittle early in its expected useful life and is prone to cracking and shattering. As a result of these defects, the Plumbing System leaks and causes severe property damage.  Yet Defendants continue to manufacture and sell FlowGuard to the public, continue to make false representations, and continue to improperly reject warranty claims, despite the fact that the Plumbing System is defective and will fail, costing consumers substantial removal, replacement and repair costs.

4.      Plaintiffs bring this action to seek redress for damages caused by Defendants' wrongful conduct.

## JURISDICTION

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this civil action is a class action in which the matter in controversy exceeds $5,000,000.00 exclusive of interest and costs, and Plaintiffs and most members of the Class[2] are citizens of states different from any Defendant.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendant Lubrizol is subject to the Court's personal jurisdiction.

---

[1] https://www.flowguardgold.com/ (last visited March 3, 2020).
[2] The "Class" is defined in ¶ 74.  Members of the Class are referred to herein as "Class Members."

7.      As a result of Defendants' designing, testing, manufacturing, advertising, selling, warranting and distributing, either directly or indirectly through third parties or related entities, of Plumbing Systems to purchasers throughout Ohio, Defendants obtained the benefits of the laws of Ohio and profited from Ohio commerce.

8.      Defendants conducted systematic and continuous business activities in and throughout the state of Ohio and otherwise intentionally availed themselves of the markets of the state of Ohio through the promotion and marketing of their products.

## PARTIES

9.      Plaintiffs Kevin and Janet Jones are Arizona residents and own a home located in Chandler, Arizona.

10.      Lubrizol Advanced Materials, Inc.'s principal place of business is located in Brecksville, Ohio.  Defendant Lubrizol conducts business within the United States, including within the state of Ohio.

11.      Charlotte Pipe and Foundry Company's principal place of business is located in Charlotte, North Carolina.  Defendant Charlotte conducts business within the United States, including within the state of Ohio.  Defendant Charlotte was responsible for, or otherwise involved in, the development, manufacture, marketing, sales, warranting and distribution of the Plumbing System.   In 2004, Charlotte acquired Thompson Plastics ("Thompson"), another company that manufactured FlowGuard.  Charlotte currently utilizes and manufactures FlowGuard at Thompson's former Huntsville, Alabama manufacturing plant.[3]

---

[3] Concerning the acquisition of Thompson, Charlotte stated on its own website: "With our recent acquisition of Thompson Plastics in Huntsville, AL, Charlotte Pipe has added even more FlowGuard Gold products to its line." *See, e.g.*, https://web.archive.org/web/20050805081340/http://www.charlottepipe.com/Default.aspx?Page=FGG&type=FGG (last visited March 3, 2020).

12.     Upon information and belief, Defendants work in conjunction with one another to develop and create FlowGuard brand Plumbing Systems.

## FACTUAL ALLEGATIONS

### A.     Plaintiffs Kevin and Janet Jones Factual Allegations

13.     Plaintiffs Kevin and Janet Jones are the first owners of a home located in Chandler, Arizona.

14.     Plaintiffs' FlowGuard Gold CPVC Plumbing System was designed and manufactured by Defendants and installed in the Joneses' home during the 1999 construction of the home.

15.     In October 2019, the Joneses experienced a leak in their Plumbing System.  The leak was in the ceiling of a bedroom that the Joneses use as an office.  The leak dripped through the ceiling, which eventually caved in.  The leak ruined the Joneses' ceiling fan and caused other damage to the office.

16.     Upon discovering the leak, the Joneses promptly put a bucket under the leak and turned off the water in the home.  The Joneses arranged for a remediation company to dry out their home and for a contractor to repair the leak.  The contractor reported that the pipe that leaked was brittle.

17.     Following the repair of the leak, Mr. Jones gradually turned the water to the home back on.  Immediately thereafter, another leak sprung in the ceiling above the home's kitchen and front bathroom.

18.     This second leak caused damage throughout the kitchen and bathroom.  As a result of the leak, portions of the ceiling in the kitchen and bathroom had to be removed, the bathroom vanity needed to be replaced, and the baseboards in the kitchen and bathroom needed

4

to be replaced.  The repairs for the damage caused by these two leaks were partially covered by the Joneses' insurance company, but the Joneses were still forced to pay a $1,000 deductible, plus several thousand dollars more for additional repairs not covered by insurance.

19.     The Joneses have been advised by multiple plumbers that the Joneses' Plumbing System is extremely brittle.

20.     Due to the leaks in the Joneses' Plumbing System, the pipes' brittleness, and the inevitability of additional leaks in the future, the Joneses were forced to prematurely replumb their home, replacing the defective Plumbing System.  The replumb cost the Joneses over $11,000.  The Joneses have also had to expend over $2,000 on hotels while they were without running water, including during the replumb.

21.     In November 2019, Mrs. Jones contacted Charlotte to initiate a warranty claim. The initial representative with whom Mrs. Jones spoke was not aware that the Plumbing System was warranted by the company.  Mrs. Jones then spoke with a second representative named Kelly who stated that Charlotte backs up their product, but that Mrs. Jones needed to follow a process.  Kelly told Mrs. Jones that she should deal with the company's representative in Arizona and that the Arizona representative would set Mrs. Jones up with a Product Complaint Form.

22.     When Mrs. Jones contacted the Arizona representative, as directed, Mrs. Jones was initially met with silence.  When Mrs. Jones gave additional information and requested the Product Complaint Form, the Arizona representative interrogated Mrs. Jones, asking, "Who are you with?".  Mrs. Jones reiterated the Joneses' situation and experience with their Plumbing System, and explained that Charlotte gave Mrs. Jones the Arizona representative's phone number and directed her to work with the Arizona representative.  The Arizona representative advised

5

Mrs. Jones that he would call her back and would get her the form she requested so that the Joneses' warranty claim could be processed.

      23.    To date, the Joneses have not heard back from the Arizona representative nor have they received the form required for them to proceed with their warranty claim.

      24.    The following photos are of the Joneses' failed Plumbing System:





**B.    The FlowGuard Plumbing System**

25.     Defendants' Plumbing System is a cheaper alternative to copper plumbing systems.  The Plumbing System is made of chlorinated polyvinyl chloride (CPVC).

26.     According to Lubrizol, it developed CPVC "as a tough, reliable plumbing material."[4]  The current formulation of Lubrizol's FlowGuard CPVC was introduced in 1991 and is still sold today.[5]

27.     Lubrizol licenses its "FlowGuard Gold" trade name to companies that use Lubrizol's resin to make CPVC pipe and fittings, including Charlotte.  Lubrizol provides

---

[4] https://www.flowguardgold.com (last visited March 3, 2020).
[5] https://www.lubrizol.com/CPVC/About-Lubrizol-CPVC (last visited March 3, 2020).

Charlotte with the resin, which Charlotte then extrudes and molds into the Plumbing System's pipes and fittings.  Charlotte manufactures the Plumbing Systems in some or all of its plants, which are located in North Carolina, Texas, Florida, Pennsylvania, Alabama and Utah.[6] Charlotte's Plumbing System pipes and fittings are installed in Plaintiffs' home and Class Members' homes throughout the United States.

28.     The Plumbing System is marketed and sold for use as a plumbing system in residential and commercial buildings.  Yet, at all times, Defendants have concealed from and/or failed to disclose to Plaintiffs and Class Members the defective nature of the Plumbing System, which is prone to cause catastrophic damage to the Class's homes and businesses.

**C.     Defendants' Representations Concerning the Plumbing System**

29.     Defendants have used and continue to use a variety of methods to communicate representations about the durability and quality of the Plumbing System to the general public and contractors in the plumbing installation business.  These representations were and are published on Internet sites, including Defendants' websites, at trade, building, and home shows typically open to the general public and contractors who service ultimate consumers of the Plumbing System, and on point of sale displays.

30.     On its website Lubrizol boasts that it is "[t]he world leader in CPVC resins and compounds with proven performance."[7]

31.     Concerning FlowGuard in general, Lubrizol claims:

FlowGuard Gold piping systems are backed by a nearly 60-year track record and provide long-term reliability and performance. The systems are durable and will not degrade, pit or scale, even when in contact with high chlorine levels.[8]

---

[6] https://www.charlottepipe.com/plant_locations.aspx (last visited March 3, 2020).
[7] https://www.lubrizol.com/CPVC (last visited March 3, 2020).
[8] https://www.flowguardgold.com/flowguard-gold-vs-pex-fact-sheet-download (last visited March 3, 2020).

32.     Concerning durability, Lubrizol touts that "FlowGuard Gold® CPVC is 100% immune to corrosion or degradation caused by chlorinated water and ***will never fail*** due to contact with normal drinking water."[9]

33.     Concerning reliability, Lubrizol advises that "more than 11 billion feet of FlowGuard Gold® CPVC pipe has been installed in the U.S.—giving it the longest, most proven track record among non-metallic plumbing systems."  *Id.*

34.     Lubrizol's website includes industry standards it contends that its FlowGuard meets, including, but not limited to: "ASTM D1784, Specification for Rigid Poly(Vinyl Chloride) Compounds and Chlorinated Poly(Vinyl Chloride) (CPVC) Compounds" and "ASTM D2846, Standard Specification for Chlorinated Poly(Vinyl Chloride) (CPVC) Plastic Hot- and Cold-Water Distribution Systems."[10]

35.     Concerning chlorine resistance, Lubrizol claims that "FlowGuard Gold pipes and fittings are naturally immune to chlorine degradation, due to the inclusion of chlorine in its molecular structure" and that "a FlowGuard Gold plumbing system will never fail under normal use due to chlorine levels."[11]

36.     Charlotte has also made various representations about the quality and durability of the Plumbing System.

37.     On the cover of Charlotte's brochure for its FlowGuard Plumbing System, Charlotte lists three attributes of the Plumbing System:

- QUALITY

- RELIABILITY

---

[9] https://www.flowguardgold.com/make-the-switch-to-flowguard-gold-cpvc (last visited March 3, 2020) (emphasis added).
[10] https://www.flowguardgold.com/specifications-submittals-and-codes (last visited March 3, 2020).
[11] https://www.flowguardgold.com/pex-vs-cpvc (last visited March 3, 2020).

- PERFORMANCE.[12]

38.    The third page of the same brochure makes many assertions about the Plumbing System.  For example, it touts that "FlowGuard Gold Pipe & Fittings are Built for Strength," stating that the Plumbing System has "[e]xcellent corrosion resistance to chlorine, chloramines and chlorine dioxide, which are used as disinfectants in municipal water systems."  *Id.*

39.    Charlotte repeats these representations in marketing materials that accompany the product at points of sale at distributors and national retailers, such as Home Depot.

40.    In its FlowGuard Technical Manuals, which are geared toward builders, contractors and plumbers, Charlotte has stated the following:

> When you need a dependable hot- and cold-water piping system, specify Charlotte Pipe's full line of CPVC-CTS FLOWGUARD GOLD® pipe and fittings. Our market research indicated that you and your customers require a potable-water system that will provide a lifetime of reliable service.
>
> * * *
>
> Charlotte Pipe is able to provide you with a system of the highest quality products and the best service in the industry.

41.    Charlotte's literature explains that its Plumbing System "pipes and fittings are made with 100 percent FlowGuard Gold high-performance CPVC compounds."

42.    Charlotte further claims in its literature that the Plumbing System is "superior" in certain ways when compared to copper, cross-linked polyethylene (PEX), and polypropylene random (PP-R).

43.    Defendants have advertised that the Plumbing System meets certain industry standards (*i.e.*, ASTM International – a standard setting organization that establishes industry

---

[12] Available at: https://www.charlottepipe.com/Documents/Brochures/BR-FGG-IDEA.pdf (last visited March 3, 2020).

standards for many different products) despite failing to test and adequately determine the reliability of the products when used in the real world.

44.    Defendants state that the Plumbing System is listed for and meets certain industry standards, including the following: ASTM D1784, ASTM D2846, ASTM F493, NSF Standard 14.[13]

45.    Defendants' Plumbing System does not conform to Defendants' voluminous express representations and does not conform to applicable industry standards.

**D.    The Plumbing System's Warranty**

46.    Charlotte sold and sells the Plumbing System with written warranties.  The warranties create an expectation and belief within the industry, and with ordinary consumers, that the Plumbing System will last as long as the warranty period.

47.    Charlotte established a warranty period for the Plumbing System without conducting appropriate testing to determine if the warranty period was supported by actual or simulated use.

48.    In 1999, when Plaintiffs' Pluming System was installed, Charlotte's written warranty warranted that the Plumbing System would "be free from manufacturing defects and conform to currently applicable ASTM standards under normal use and service for as long as the single family residential dwelling is owned and occupied by the original owner."  As such, homeowners could expect that the Plumbing System would last a lifetime.

49.    Aware of the defects in the Plumbing System and the fact that its life span was in reality relatively short, in or around 2008, Charlotte dramatically decreased the length of its FlowGuard warranty from unlimited as to time to only ten (10) years.

---

[13] *See, e.g.*, https://www.flowguardgold.com/specifications-submittals-and-codes (last visited March 3, 2020); https://www.charlottepipe.com/flowguard_gold.aspx (last visited March 3, 2020).

50.      Charlotte's warranties contain unconscionable terms, including, among other things, that the remedy is limited to "replacement of, or credit for, the defective product." Therefore, even if a Class Member's warranty claim is accepted and successfully processed by Charlotte, the Class Member would only get a free piece of equally defective pipe and would be responsible for, not only labor, but all other replacement costs.  Such limitations are inadequate to redress failure of the Plumbing System or any resulting damage to the structure in which it is installed.  Thus, the warranties fail of their essential purpose.  The warranties further include various other unenforceable limitations.

51.      Lubrizol has an active role in Charlotte's warranty process, including evaluating the defective pipes and fittings that are submitted to Charlotte during warranty claims and drafting reports, or "Technical Documents," on Lubrizol's purported findings.  These Technical Documents often list specious excuses for the premature failure of the Plumbing Systems.

52.      Defendants have knowingly and intentionally concealed that they actually had no intention of providing the services set forth in their purported warranties.

53.      Defendants have routinely ignored Class Members' attempts at making warranty claims for their defective Plumbing Systems and summarily dismissed those claims when Class Members were permitted to present them.

**E.      Defendants' Knowledge of and Notice that its Plumbing System was Defective**

54.      For many years, Defendants have been well aware of the problems related to the cracking and shattering of the Plumbing System.  It has received warranty claims and complaints from customers (like those submitted by the Plaintiffs) that the Plumbing System was and is defective and has not functioned as advertised and warranted.  Defendants acknowledge on their websites that the Plumbing System is susceptible to expansion and contraction and repair

problems (cracking and splintering).  In addition, on-line postings which provide specific dates, where the complaint or on-line posting was made, a description of the product, and how Defendants handled the complaints and inquiries, further put Defendants on notice concerning the defective nature of the Plumbing System.  A sampling of such on-line postings are as follows [sic throughout]:

    **a.**    **Date:**        **11/29/2014**

I did a water heater this morning and ran into some problems with the CPVC piping. It's old and brittle, and snapped off rather suddenly after two clicks from my ratchet cutters. This is what I thought to be the premium brand, and what I used exclusively when I was doing new houses, 10+ years ago. I picked up materials to do a copper installation, and got surprised once I got to the job. I transitioned my work to the CPVC with sharkbites and left everything dry and in good shape. However, I'm a little worried about the plastic not holding up. I was expecting a longer life-span out of the Flowguard-Gold pipe. If others have had similar concerns feel free to vector me to other posts on the subject. Thanks.[14]

    **b.**    **Date:**        **10/27/2013**

The line that leads to the refrigerator had cracked for the second time. The first time a patch was put into the line and now it is leaking a foot above that section. The pipe is FlowGuard Gold and you can feel the crack in the pipe. I am just wondering if I should insist on the insurance company covering the cost of taking out the entire pipe for however far back it leads. I have no clue at this point if it runs 4 feet more up the wall and turns and runs through the floor joists or if it runs to the attic. So I have to at least fix the immediate spot but really feel this entire bunch of pipe needs to go.

Any thoughts on how much of this pipe should go?[15]

    **c.**    **Date:**        **04/27/2011**

I'm looking for other plumbers that have experienced problems with CPVC piping when a compression type fixture stop is installed on the pipe. I have letters and documentation from the stop manufacturer that states their stops can be used on CPVC and they recognize this practice as industry standard in some areas of the

---

[14] https://terrylove.com/forums/index.php?threads/hey-terry-flowguard-cpvc-getting-brittle.59346/ (last visited December 30, 2019).
[15] https://terrylove.com/forums/index.php?threads/flowguard-gold-pipe-breaks.54305/ (last visited December 30, 2019).

country. Lubrizol (Flowgaurd Gold) also has public documentation that recognizes these types of connections as acceptable.

I am experiencing failures at toilets, lavatories, kitchen sinks, etc. on the hot and cold side of the system where a fixture stop just breaks off obviously flooding the home. I have had several of these tested by a chemist to try and figure out what the issue is. The test results where somewhat inconclusive due to lubrizol's resin "recipe" not being public knowledge so the chemist had nothing to compare the ingredients to.

Anyway, the failures I'm seeing are around 4-5 years after installation which is whithin the 8 year state statute that covers a homeowner against poor workmanship. I'm being sued on a regular basis for poor workmanship and I am convinced something is wrong with the pipe. I'm hoping I can find a few more companies that have experienced the same issue so we can get Lubrizol to discuss this.[16]

**d.      Date:          03/08/2012**

I have been in homebuilding 20+ years and worked for a major builder building 300+ homes a year. We converted to CVCP Flowguard in early/mid 90's. When I built my own home in 1996 I used CPVC Flowguard, because I thought it was the best product available. In the past week on two separate occassions I have woke up hearing water dripping/flowing in our finished lower level. On both occassions in the main section of pipe (not near a joint) there were a string of bumps (looks something like a string of poision ivy) and one of the bumps burst open shooting out water. I fixed one on Monday (still floating drywall mud) and another one today. The one today as I cut out a section of pipe (about 6" long) I noticed another section of bumps 2-3" long (had not leaked there,yet) about 18" away. Therefore, I cut out the entire section. It is 3/4" line that reduces down to 1/2" when it goes to fixtures. The leak on Monday was probably 30' away from the leak that started last night sometime.
Has anyone had this problem? Concerned that will have another "burst" when we are gone, so we will start shutting of the water when we leave more than 24hours. Should I take out the drywall and replace all the pipe (seems like the only solution).[17]

**e.      Dated:          12/12/2012**

Hi,

My apologies for intruding, I am not a plumber, but a helicopter pilot by trade. I really felt the need to share my experience with the product. I built my own home

---

[16] https://www.ridgidforum.com/forum/mechanical-trades/professional-plumbing-discussion/38351-flowgaurd-gold-cpvc (last visited December 30, 2019).
[17] https://www.ridgidforum.com/forum/mechanical-trades/ask-the-plumbing-experts/41568-cpvc-pipe-bursts (last visited December 30, 2019).

in 2006 as an owner builder. This was not the first house that I have built, and I did not do the plumbing myself. I had a licensed plumbing contractor do all the work.

In my guest bathroom the plumbers ran a hot water line from an on demand heater through the walls to the set of Delta shower head valves. The pipe used was the Flow Guard Gold PVC pipe.

About a month ago, I noticed some buckling in a laminate floor in a bedroom adjacent that bathroom. It is a 350 sq ft guest suite with higher end laminate flooring designed to hand a lot of traffic.

My initial reaction was that the shower pan was leaking and through a series of tests and poking around (with a licensed plumbing contractor at my side) we were able to determine that there must be a hot water pipe leaking in the back wall of the shower.

Unfortunately it is a 3 sided 4'x7' shower with 10' high tiled walls.
Fortunately, that back wall was also the exterior wall of the house
Bottom line: we cut a hole in the side of the house, located the leak and exposed the damp wood. Here is the scary part.....it was not even at a joint. It was a pin hole in the pipe, no where near the joint.

See 2 pictures. You can see the area where the leak was, and then a close up of the leak.

Finally, how in the heck does a 6 year old piece of low pressure PVC just pop a pin hole in the pipe?

This little pinhole will cost me $1200 - $1500 when all said and done. If it can happen there, it can happen anywhere in my home if the same crap pipe was used everywhere else.

Is there some kind of class action suit against the manufacture of this product?[18]

**f.    Dated:      06/26/2019**
[Home Depot customer review concerning Charlotte's FlowGuard]

Worst product. Unreliable and fragile. Use PVC or copper.[19]

**g.    Dated:      12/10/2019**
[Home Depot customer review concerning Charlotte's FlowGuard]

---

[18] https://www.plumbingzone.com/f22/defective-flowguard-gold-cpvc-pipe-21461/index5/ (last visited December 30, 2019).
[19] https://www.homedepot.com/p/Charlotte-Pipe-3-4-in-x-10-ft-CPVC-SDR11-Flowguard-Gold-Pipe-CTS-12007-0600/100161617 (last visited December 31, 2019).

Great initial quality but, after this stuff is in service a while it becomes brittle and can no longer be trusted to hold the pressures of water etc. If you plan on staying in your home over 10 years do yourself a favor and learn how to solder copper pipes together youll be glad you did later down the road.[20]

**h.    Dated:        05/06/2017**
[Home Depot customer review concerning Charlotte's FlowGuard]

Our house has intake pipes made of this stuff. We have had multiple failure points throughout the pipes. They are in the length of the tube. Some have resulted in catastrophic loss of whole walls.[21]

55.    In fact, Lubrizol's own website acknowledges the defective nature of the Plumbing System and admits it awareness about failures with a special page dedicated to "Handling Aged Pipe."[22]  Previous versions of this webpage advised that FlowGuard should be "handled carefully" and that "[i]f a repair is needed, it's important to use a fine-toothed saw to cut" the material.  The webpage now warns that those making repairs should "**Never Use Ratchet or Scissors-Style Cutters**."  The page continues to state that "[s]ervice contractors who attempt to cut into older CPVC pipe with ratchet cutters or scissors-style cutters have experienced issues with cracking or splintered pipe," and claim "[t]his is not due to a defect in the pipe, but instead the use of the wrong tool."

56.    On the contrary, Charlotte's own installation instructions state the opposite, "***FlowGuard Gold pipe can be easily cut with a*** wheel type plastic tubing cutter, ***ratchet cutter*** or fine tooth saw."

57.    Defendants have knowingly and intentionally concealed that, notwithstanding statements on their websites, and in their brochures, advertisements and warranties, their

---

[20] https://www.homedepot.com/p/Charlotte-Pipe-1-2-in-x-10-ft-CPVC-SDR11-Flow-Guard-Gold-Pipe-CTS-12005-0600/100170202 (last visited December 31, 2019).
[21] *Id*. (last visited December 31, 2019).
[22] https://www.flowguardgold.com/handling-aged-pipe (last visited December 30, 2019).

Plumbing System suffers from embrittlement and routinely cracks and shatters, resulting in plumbing leaks and attendant damage.

58.     Defendants have ignored customers' complaints and concerns, and have failed to implement any changes to their Plumbing System or warranty procedures to remedy the defects associated with their products.

**F.     Plaintiffs and the Class Have Been Injured by Defendants' Actions**

59.     Defendants knew and failed to disclose that it did not design, test or manufacture the Plumbing System in such a way as to withstand embrittlement, cracking and shattering.  The Plumbing System reached the consuming public, including Plaintiffs, without substantial correction of their defects and without warning of the latent defects alleged herein.

60.     Defendants continue to advertise and sell the Plumbing System for use in homes and other structures, omitting to disclose to Plaintiffs and Class Members, and their agents or contractors, facts concerning the Plumbing System, including, but not limited to, concealing that the Plumbing System was defectively formulated.  All of these facts are material to a reasonable consumer and Defendants had a duty to disclose these facts.

61.     Defendants did not provide warnings with the Plumbing System or otherwise warn consumers of the problems or dangers that they knew existed.  In fact, to this day, Defendants have concealed their knowledge of the defects in their Plumbing System from the public.  Furthermore, to this day, Defendants have not recalled their defective Plumbing System.

62.     The Plumbing System did not perform in accordance with the reasonable expectations of Plaintiffs and Class Members in that it was not durable and suitable for use as a plumbing system in their homes and other structures.

18

63. Had Defendants not withheld and omitted vital information concerning the design, reliability and performance of the Plumbing System, Plaintiffs and members of the Class would not have purchased and/or installed the Plumbing System in their structures, or would have replaced the Plumbing System before the defects manifested.

64. Because the defects in the Plumbing System are latent and not detectable until manifestation, Plaintiffs and the Class Members were not reasonably able to discover their Plumbing Systems were defective until after installation, even with the exercise of due diligence.

65. As a result of Defendants' misconduct, Plaintiffs and Class Member have suffered actual damages in that the Plumbing System in their homes and other structures has prematurely failed and will continue to do so, potentially damaging other building elements, causing continuous and progressive damage to real and personal property, and requiring Plaintiffs and Class Members to expend thousands of dollars to repair or replace the Plumbing System long before the expiration of the "useful life" of the Plumbing System as represented by Defendants. These failures are common in the Plumbing System regardless of when, where, or how it is installed.

66. Defendants have failed to adequately compensate Plaintiffs and the Class for damages suffered as a result of the defective Plumbing System.

67. It is unlikely that most Class Members could afford to seek recovery against Defendants on their own. A class action is therefore the only viable, economical, and rational means for Class Members to recover from Defendants for the damages they have caused.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

68. Defendants knew that their Plumbing System was defective prior to the time of its sale, and intentionally concealed material information and the truth concerning its products from

Plaintiffs, members of the Class and the general public, all the while continually marketing and promoting the Plumbing System. Defendants' acts of fraudulent concealment include failing to disclose that the Plumbing System was defectively designed and/or manufactured and would deteriorate in less than their expected lifetime, leading to damage.

69.     Because the defects in the Plumbing System are latent and not detectable until manifestation, and given the locations where the Plumbing System is foreseeably placed and therefore often impossible to view, defects are difficult to detect. Plaintiffs and members of the Class were not reasonably able to discover that the Plumbing System was defective and unreliable until recently, despite their exercise of due diligence. Thus, the running of the applicable statutes of limitation have been tolled with respect to any claims that Plaintiffs or the Class Members have brought or could have brought as a result of the unlawful or fraudulent course of conduct described herein.

70.     Defendants had a duty to disclose that its Plumbing System was defective, unreliable and inherently flawed in its design and/or manufacture and that the Plumbing System would fail within its expected period of use, resulting in significant damages and eventually catastrophic failure. Notwithstanding their duty to inform Plaintiffs and Class Members, Defendants have never disclosed the defects to Plaintiffs and the Class.

71.     As a result, Defendants are estopped from pleading any statute of limitations defense. Defendants actively concealed and misrepresented to Plaintiffs and the Class Members facts that were essential to understanding that Plaintiffs and the Class Members had claims against Defendants, and thus, Defendants have acted to prevent Plaintiffs and the Class Members from learning that they possessed claims against Defendants. Had Plaintiffs and the Class been aware of the facts which Defendants misrepresented and concealed, they would have

commenced suit against Defendants before the running of any statute of limitations alleged to be applicable to this case.

72.     Defendants are further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of their fraudulent concealment.

## CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the class.  This action satisfies requirements set forth in Rule 23(a) and Rule 23(b)(3).

74.     Plaintiffs advance this action on behalf of the following classes (together, the "Class"):

> Nationwide Class:  All individuals and entities that own or have owned homes or other structures located in the United States in which Charlotte Pipe and Foundry Company's FlowGuard Gold CPVC are or were installed from January 1, 1991 to present. Excluded from the Nationwide Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

> Arizona Class:  All individuals and entities that own or have owned homes or other structures located in the State of Arizona in which Charlotte Pipe and Foundry Company's FlowGuard Gold CPVC are or were installed from January 1, 1991 to present.  Excluded from the Arizona Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Claims for personal injury are specifically excluded from the Class.

75.     Numerosity (Rule 23(a)(1)).  Although the actual size of the Class is uncertain, Plaintiffs are informed and believe the Class is comprised of at least many of thousands of

property owners, and Defendants have represented that FlowGuard is in "millions of homes and businesses," making joinder impractical.  The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

76.     Communality (Rule 23(a)(2)).  There exist questions of law and fact common to all Class Members.  Common questions include, but are not limited to, the following:

a.      Whether the Plumbing System is subject to premature failure well in advance of its represented useful life;

b.      Whether the Plumbing System is not suitable for use;

c.      Whether Defendants knew, or should have known, of the defective nature of the Plumbing System before making available for purchase and use by Plaintiffs and Class Members;

d.      Whether Defendants failed to disclose to Plaintiffs and Class Members the defective nature of the Plumbing System;

e.      Whether Defendants, through making misleading representations of material facts regarding the Plumbing System's qualities, omitted material facts regarding the particular susceptibility of the Plumbing System to crack, shatter and leak;

f.      Whether Defendants' practices, by repeatedly concealing the true nature of the defects in the Plumbing System, violated common laws.

g.      Whether Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable and ordinary care in the testing, design, production, manufacturing, warranting and marketing of the Plumbing System;

h.      Whether Defendants breached their duties to Plaintiffs and Class Members by designing, manufacturing, producing, marketing, advertising, and selling defective Plumbing Systems to Plaintiffs and Class Members;

i.      Whether Defendants had a duty to Plaintiffs and Class Members to disclose the true nature of the Plumbing System;

j.      Whether the facts not disclosed by Defendants to Plaintiffs and Class Members are material facts;

k.      Whether Defendants knew, or should have known that the Plumbing System would prematurely fail, is not suitable for use as plumbing in residences or businesses, and is otherwise is not as represented by Defendants;

l.      Whether Plaintiffs and Class Members are entitled to compensatory damages, restitution, and the amounts thereof respectively;

m.      Whether Defendants should be declared financially responsible for notifying all Class Members of the defective Plumbing System and for the costs and expenses of repair and replacement of all defective plumbing materials and providing restitution of monies paid and inadequate value given;

n.      Whether Defendants should be ordered to disgorge, for the benefit of Class Members, all or part of their ill-gotten profits received from the sale of defective Plumbing System and/or to make full restitution to Plaintiffs and Class Members; and

o.      Whether Defendants should be enjoined from continuing to market the Plumbing System, as defined herein, utilizing misleading misrepresentations and omission of material facts.

23

77.     Typicality (Rule 23(a)(3)).  The claims of the representative Plaintiffs are typical of the claims of Class Members, in that the representative Plaintiffs, like all Class Members, own a structure in which the defective Plumbing System was installed and failed prematurely.  The representative Plaintiffs, like all Class Members, have suffered a common injury:  Plaintiffs have incurred the cost of repairing and/or replacing the defective Plumbing System in their home and repairing any resultant consequential damage to other building components.  The factual basis of Defendants' misconduct is common to all Class Members.

78.     Adequacy (Rule 23(a)(4)).  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective building products, failure to disclose material information regarding product performance, and violation of consumer protection statutes.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

79.     Predominance of Common Questions (Rule 23(b)(3)).  Common questions of law and fact predominant over any questions involving individualized analysis.  Fundamentally, there are no material questions of fact or law that are not common to Class Members.  The performance of the Plumbing System relative to its represented qualities is a common question, as is the Defendants' knowledge regarding the Plumbing System performance and Defendants' uniform omission to Class Members of these material facts.  Common questions of law include whether Defendants' conduct violates Arizona's consumer protection statute and other law, and the Class Members' entitlement to damages and remedies.

80.    <u>Superiority (Rule 23(b)(3)).</u>  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy.  Most Class Members likely would find the cost of litigating their individual claims to be prohibitive and will have no effective remedy at law.  Thus, absent a class action, Class Members will continue to incur damages and Defendants' misconduct will proceed without remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.  There is no impediment to the management of this action because of the virtual identity of the questions of law and fact common to all Class Members.

81.    <u>Injunctive Relief (Rule 23(b)(2)).</u>  Defendants have engaged and continue to engage in business practices which are unfair and fraudulent by, among other things, advertising and representing that the Plumbing System has characteristics and benefits that it does not.

82.    Plaintiffs seek class-wide injunctive relief on grounds consistent with the standards articulated in Rule 23(b)(2) that establish final injunctive relief as an appropriate class-wide remedy, in that Defendants continue to advertise the Plumbing System, continue to provide half-truths and misleading information about the Plumbing System, and continue to omit material facts regarding the Plumbing System.

**FIRST CAUSE OF ACTION**
**Negligence**

83.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

84.     Defendants owed a duty to Plaintiffs and members of the Class to exercise reasonable care in the design, development, formulation, testing, manufacture, marketing, selling and warranting of the Plumbing System.  Defendants further had a duty not to put defective products such as the Plumbing System on the market.

85.     Defendants breached their duty to Plaintiffs and the Class by designing, developing, formulating, testing, manufacturing, selling and warranting a defective product to Plaintiffs and the Class, and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

86.     Defendants were aware, or reasonably should have been aware, that the Plumbing System was defective and did not perform its intended use.

87.     Defendants were aware, or reasonably should have been aware, of the foreseeable risks associated with the use of the Plumbing System.

88.     When they purchased Defendants' Plumbing System, Plaintiffs and the Class were not aware of its defective nature.

89.     The injuries sustained by Plaintiffs and members of the Class could have been reasonably foreseen by Defendants.

90.     As a direct and proximate cause of the foregoing, Plaintiffs and the Class have suffered and will continue to suffer damages and economic loss as described above, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Negligent Failure to Warn

91.     Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

92.     Defendants owed a duty to the consuming public to design, develop, formulate, test, manufacture, market, sell and warrant a product reasonably free of defect.

93.     Defendant had a duty to disclose to the consuming public the foreseeable risks associated with the use of the Plumbing System in homes and other structures.

94.     Defendants were aware, or reasonably should have been aware, of the foreseeable risks associated with the use of the Plumbing System in homes and other structures.

95.     Defendants were negligent in that they knew or, by the exercise of reasonable care, should have known that Defendants' Plumbing System, under ordinary use in homes and other structures, might be harmful or injurious to the consuming public, including the Plaintiffs and members of the Class, but failed to use reasonable care to warn Plaintiffs and members of the Class and the consuming public of the potentially harmful and injurious effects in the manner that a reasonable person would under the same or similar circumstances.

96.     Defendants failed to exercise reasonable care and give adequate warnings or instructions to consumers about the reasonably foreseeable dangers that could result from using the Plumbing System under reasonably foreseeable conditions.

97.     Consumers using and installing the Plumbing System were not aware of its defective nature.

98.     Plaintiffs were not aware of the destructive nature of the Plumbing System and Defendants knew or had reason to know that consumers would not realize the dangerous condition of it.

99.     Had Plaintiffs and the Class been aware of the true nature of the quality of the Plumbing System, they would not have purchased the Plumbing System, would have negotiated additional warranty coverage, would have negotiated a lower price to reflect the risk, or simply

would have avoided the risk all together by purchasing different a different plumbing system. Further, Plaintiffs and the Class would have replaced the defective Plumbing System sooner, potentially preventing damage to their homes.

100.    Due to Defendants' failure to provide consumers with adequate warnings or instruction about the defective and destructive nature of the Plumbing System, Plaintiffs and members of the Class have been harmed.  Such harm would not have been suffered if Defendants provided adequate warnings or instructions.

101.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs and members of the Class have incurred and will incur damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Strict Liability – Design Defect

102.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

103.    Defendants designed the Plumbing System to be used and installed in the Plaintiffs' and Class Members' homes and other structures.

104.    The design of the Plumbing System, including the formulation and composition of the material making up the Plumbing System is defective and because of such design defects, the Plumbing System is unreasonably dangerous to the consuming public, including Plaintiffs and members of the Class.  In contravention of Section 402A of the Restatement (Second) of Torts, the Plumbing System posed a substantial likelihood of harm at the time it was sold.

105.    The design defect in the Plumbing System existed at the time the Plumbing System was sold and/or when the Plumbing System left Defendants possession or control.

28

106.    The risks inherent in the design of the Plumbing System outweigh the benefits of its design.

107.    Feasible design alternatives existed to make the Plumbing System safer for its intended use at the time of its design.

108.    The Plumbing System was expected to be and was installed in consumers' homes and other structures, including Plaintiffs' home, without substantial change in its condition from the time of its design, manufacture and sale.

109.    Defendants are strictly liable for the injuries that the defective Plumbing System has caused Plaintiffs and members of the Class.

110.    The injuries caused to Plaintiffs as a result of Defendants' defective Plumbing System could and should have been reasonably foreseen by Defendants.

111.    As a proximate result of the defective design of the Plumbing System, Plaintiffs and the Class have incurred and will incur damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Strict Liability – Manufacturing Defect**
**(against Defendant Charlotte)**

112.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

113.    Defendant Charlotte manufactured the Plumbing System to be used and installed in Plaintiffs' and Class Members' homes and other structures.

114.    When the Plumbing System left Charlotte's control, it deviated in a material way from its design and/or performance standards.  As a result, the Plumbing System was unreasonably dangerous to the consuming public, including the Plaintiffs.

115.    The Plumbing System was defectively manufactured and posed a substantial likelihood of harm at the time it was sold and/or when the Plumbing System left Charlotte's possession or control.

116.    The Plumbing System was expected to be and was installed in consumers' homes and other structures, including Plaintiffs' home, without substantial change in its condition from the time of its manufacture and sale.

117.    Charlotte is strictly liable for the injuries that the Plumbing System has caused Plaintiffs and members of the Class.

118.    The injuries caused to Plaintiffs as a result of the defective Plumbing System could and should have been reasonably foreseen by Charlotte.

119.    As a proximate result of Charlotte's defective manufacture of the Plumbing System, Plaintiffs have incurred and will incur damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Strict Liability – Failure to Warn**

120.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

121.    Defendants designed and manufactured the Plumbing System used and installed in Plaintiffs' and Class Members' homes and other structures.

122.    When Plaintiffs and members of the Class bought the Plumbing System, they were not aware of the defective and destructive nature of the Plumbing System.  Defendants knew or had reason to know that those consumers would not realize the defective condition of the Plumbing System.

123. Defendants did not provide, and the Plumbing System did not contain, adequate warnings and as a result, the Plumbing System was unreasonably dangerous to the consuming public, including the Plaintiffs and members of the Class.

124. The defect in the Plumbing System, including the lack of warnings, existed at the time the Plumbing System was sold and/or when the Plumbing System left Defendants' possession or control.

125. The Plumbing System was expected to be and was installed in consumers' homes and other structures, including the homes of Plaintiffs and members of the Class, without substantial change in their condition from the time of their manufacture or sale.

126. Had Plaintiffs and the Class been aware of the true nature of the quality of the Plumbing System, they would not have purchased the Plumbing System, would have negotiated additional warranty coverage, would have negotiated a lower price to reflect the risk, or simply would have avoided the risk all together by purchasing different a different plumbing system. Further, Plaintiffs and the Class would have replaced the defective Plumbing System sooner, potentially preventing damage to their homes.

127. Defendants are strictly liable for the damage that the Plumbing System and its lack of warnings have caused Plaintiffs. Such harm would not have been suffered if Defendants had provided adequate warnings or instructions.

128. The injuries caused to Plaintiffs and Class Members as a result of the defective Plumbing System could and should have been reasonably foreseen by Defendants.

129. As a proximate result of Defendants' failure to give adequate warnings or instructions regarding any reasonably foreseeable problems, Plaintiffs and members of the Class have incurred and will incur damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
**Breach of Express Warranty**

130.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

131.    Defendants marketed and sold the Plumbing System into the stream of commerce with the intent that the Plumbing System would be purchased by contractors, subcontractors, plumbers, and end users for installation in homes and other structures owned and bought by Plaintiffs and the Class.

132.    Defendant Charlotte expressly warranted in writing that the Plumbing System is well-suited as plumbing material with a useful life matching the lifetime of the structure in which the Plumbing System is installed (or ten (10) years for purchases after Charlotte dramatically decreased the length of its warranty).  These warranties explicitly extend to future performance.

133.    For purchasers of the Plumbing System or of homes and other structures with the Plumbing System, these warranties became part of the basis of the bargain and Plaintiffs relied upon the warranties.

134.    Pursuant to Charlotte's express warranty, Charlotte is obligated to replace defective Plumbing Systems or provide monetary relief.  In exchange for these duties and obligations, Charlotte received payment of the purchase price for the Plumbing System from Plaintiffs and the Class.

135.    Defendants created additional express warranties for the Plumbing System through their sales brochures, catalogs, website and marketing materials.  These warranties have full force and effect, notwithstanding any limitations in the "limited warranties" from Charlotte.

136.    Defendants made the express warranties to the ultimate consumers, such as Plaintiffs and the Class.

137.    Plaintiffs and the Class have afforded Defendants ample opportunities to repair the complained-of defects, and Defendants have failed to remedy same in a reasonable amount of time.  Plaintiffs put Charlotte on notice, by way of a warranty claim, that their Plumbing System was problematic.

138.    Charlotte failed to perform as required under its purported warranties and breached said contracts and agreements by providing Plaintiffs and the Class with Plumbing Systems that were defective and unfit for their intended use, and failed to appropriately replace the Plumbing Systems or otherwise provide relief.

139.    Defendants breached their express warranties because the Plumbing System does not perform as promised.  The Plumbing System embrittles, cracks, shatters, otherwise deteriorates and leaks.  As a result, the Plumbing System is not suitable for use as a plumbing product.

140.    After determining that they had suffered damages from the failure of the Plumbing System, Plaintiffs gave Defendant notice of the breaches of warranty, and Defendant had actual notice of these breaches.

141.    The limitations and exclusions in Charlotte's warranties are unconscionable and unenforceable.

142.    Charlotte's warranties provide for replacement of the defective Plumbing System with equally defective parts.

143.    Charlotte failed to pay all costs and damages associated with replacing Plaintiffs' and the Class's Plumbing Systems.

144.    Charlotte included the limitations and exclusions in their warranties while failing to disclose the Plumbing System's defects to Plaintiffs and the Class.

33

145.    Plaintiffs and the Class have sustained consequential or incidental losses that would not have been sustained but for Defendants' failure of remedy to repair or replace.

146.    The consequential or incidental losses sustained by Plaintiffs and the Class were within the contemplation of the parties, and therefore should not be prohibited when such bargained for remedy fails of its essential purpose.

147.    Charlotte's purported "limited warranty" fails of its essential purpose because it purportedly warrants that the Plumbing System will perform as promised for the lifetime of the structure in which the Plumbing System is installed (or ten (10) years for purchases after Charlotte dramatically decreased the length of its warranty), when in fact, the Plumbing System does not so last.

148.    Charlotte's purported "limited warranty" also fails of its essential purpose in that it limits recovery "to replacement of, or credit for, the defective product," as well as excludes the cost of labor and reimbursement for other damages.

149.    Charlotte's purported "limited warranty" further fails of its essential purpose in that the replacement Plumbing System provided thereby is the same defective Plumbing System.

150.    Such limitations are inadequate to redress failure of the Plumbing System or any resulting damage to the structure in which it is installed.  As a result, the "limited warranty" does not provide a minimum adequate remedy.

151.    Because Charlotte's warranty fails of its essential purpose, Plaintiffs and the Class are entitled to recover available damages.

152.    Defendants' Plumbing System was defective at the time it was acquired by Plaintiffs and members of the Class.

153.     Defendants knew that the Plumbing System was defective, yet continued to represent that it was free of defects. Plaintiffs and members of the Class had no ability to detect the defect nor received notice thereof.

154.     Plaintiffs and the Class have relied on Defendants' express warranties to their detriment.

155.     Because of Defendants' breaches of warranty, Plaintiffs and the Class have suffered and will continue to suffer damages, including but not limited to any damage to the structures in which the Plumbing System is installed caused by the deterioration or failure of the Plumbing System, and any other compensatory or consequential damages.  Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

## SEVENTH CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability
### (against Defendant Charlotte)

156.     Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

157.     Defendant Charlotte designed, manufactured and sold the Plumbing System knowing that the Plumbing System would be installed in homes and other structures owned or bought by Plaintiffs and members of the Class.

158.     Charlotte is a merchant of the Plumbing System and marketed, promoted and sold the Plumbing System to the consuming public.

159.     Charlotte expected the consuming public, including Plaintiffs and Class Members, to install and use the Plumbing System in their homes and other structures and such use was reasonably foreseeable.  The Plumbing System sold by Charlotte was not merchantable at the time Charlotte sold it.

35

160.    Charlotte warranted to Plaintiffs and members of the Class that the Plumbing System was of a quality that would pass without objection in the trade and was at least fit for the ordinary purposes for which such goods were used, and in all other respects were of merchantable quality.

161.    Plaintiffs and members of the Class relied on that implied warranty.

162.    As alleged herein, Charlotte concealed and failed to disclose the true nature of the quality of the Plumbing System.

163.    Charlotte breached its implied warranty of merchantability because the Plumbing System was not of merchantable quality as it embrittled, cracked, shattered, otherwise deteriorated and leaked, and was unfit for the ordinary purposes for which it was designed and used.

164.    Given where the Plumbing System is installed – within the walls of a home or other structure – any limitation of remedies claimed by Charlotte must fail of its essential purpose in that if the Plumbing System fails, significant damage to property will occur and the replacement of the failed Plumbing System and the repairs necessitated by the failure cannot be accomplished without considerable consequential cost and expense.

165.    Charlotte has been notified by Plaintiffs of the defective nature of the Plumbing System and of its breach of warranty within a reasonable time of discovery.  As a direct and proximate result of Charlotte's breach of the implied warranty of merchantability, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Violation of the Magnuson-Moss Warranty Act**
**(15 U.S.C. § 2301, *et seq.*)**
**(against Defendant Charlotte)**

166.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

167.    The Plumbing System is a "consumer product" as defined in 15 U.S.C. § 2301(1).

168.    Defendant Charlotte is a "supplier" and a "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

169.    Charlotte supplied "written warranties" for the Plumbing System under as defined in 15 U.S.C. §§ 2301(6)(A) and (B).

170.    Plaintiffs and the Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

171.    Pursuant to 15 U.S.C. § 2310(e), although Charlotte is on written notice of the problems with the Plumbing System and Plaintiffs' claims, Plaintiffs and the Class Members are entitled to bring this class action and are not required to give Charlotte notice and opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

172.    Charlotte is liable to Plaintiffs and the Class Members pursuant to 15 U.S.C. § 2310(d)(1) because it breached its written warranties as set forth above.

173.    In connection with its sales of the Plumbing System, Charlotte gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, Charlotte warranted that the Plumbing System was fit for its ordinary purpose as a reliable building product that complies with all applicable laws and regulations.  Charlotte is liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1) because it breached the implied warranty of merchantability as set forth herein.

37

174.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class Members are entitled to recover the following damages proximately caused by Charlotte's breaches of its written warranties and the implied warranty of merchantability: (a) direct economic damages at the point of sale in the amount of the difference in value between the value of the Plumbing System as warranted (the full purchase price) and the value of the Plumbing System as delivered ($0); and (b) consequential economic damages at the point of repair in the form of the cost of repair, replacement and/or removal of the Plumbing System.

175.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class Members in connection with the commencement and prosecution of this action.

## NINTH CAUSE OF ACTION
### Unjust Enrichment

176.     Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

177.     As the intended and expected result of its conscious wrongdoing, Defendants have profited and benefited from the purchase of Plumbing System by Plaintiffs and the Class.

178.     Defendants have voluntarily accepted and retained these profits and benefits, derived from Plaintiffs and the Class, with full knowledge and awareness that, as a result of their misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness or value that had been represented by Defendants, and that Plaintiffs and the Class, as reasonable consumers, expected.

179.    Defendants have been unjustly enriched by their fraudulent and deceptive withholding of benefits to Plaintiffs and the Class, at the expense of Plaintiffs and the Class.

180.    Defendants' retention of these profits and benefits is inequitable.

181.    Plaintiffs and the Class seek the disgorgement and restitution of Defendants' wrongful profits, revenue and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

### TENTH CAUSE OF ACTION
**Fraudulent Misrepresentation, Concealment and Failure to Disclose**

182.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

183.    Defendants knowingly, intentionally, willfully, fraudulently and actively misrepresented, omitted and concealed from consumers material facts relating to the quality of the Plumbing System; specifically, that the Plumbing System was defective, would prematurely fail, and otherwise was not as warranted and represented by Defendants.

184.    Defendants were and are in a position of superiority to Plaintiffs and Class Members and had and have a duty to disclose to Plaintiffs and Class Members the actual quality of their Plumbing System.

185.    The misrepresentations, omissions and concealments complained of herein were material and were made on a uniform and market-wide basis.  The facts concealed or not disclosed by Defendants to Plaintiffs, the Class and the general public are material facts that a reasonable person would have considered to be important in deciding whether or not to purchase the Plumbing System and whether or not to remove and replace the Plumbing System in advance of its expected useful life.

186.     Plaintiffs and Class Members reasonably relied upon Defendants to make accurate disclosures concerning the Plumbing System, and further relied upon Defendants' promises in their warranties concerning the Plumbing System.  Such reliance may also be imputed, based upon the materiality of Defendants' wrongful conduct.

187.     Had Plaintiffs and the Class been aware of the true nature of the quality of the Plumbing System, they would not have purchased the Plumbing System, would have negotiated additional warranty coverage, would have negotiated a lower price to reflect the risk, or simply would have avoided the risk all together by purchasing different a different plumbing system.  Further, Plaintiffs and the Class would have replaced the defective Plumbing System sooner, potentially preventing damage to their homes.

188.     Defendants continued to conceal the defective nature of the Plumbing System even after members of the Class began to report problems and submit warranty claims.  Indeed, Defendants continue to cover up and conceal the true nature of the problems with the Plumbing System to this day.

189.     Defendants' acts and misconduct, as alleged herein, constitute oppression, fraud and/or malice entitling Plaintiffs and the Class to an award of punitive damages to the extent allowed in an amount appropriate to punish or to set an example of Defendants so as to deter future similar conduct on the part of Defendants and others.

190.     Plaintiffs and the Class are entitled to damages and injunctive relief as claimed below.

### ELEVENTH CAUSE OF ACTION
### Negligent Misrepresentation

191.     Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

40

192.     Defendants concealed from consumers material facts relating to the quality of the Plumbing System, and represented that the Plumbing System conformed to certain industry standards and that the Plumbing System would be free from defects for the length of the Plumbing System's warranties.  Defendants marketed, advertised and sold the Plumbing System without adequate testing and without warning Plaintiffs and the Class that it had not adequately tested the Plumbing System.  Defendants further mispresented the warranties for the Plumbing System.

193.     These misrepresentations and omissions concerned material facts that influenced Plaintiffs and Class Members in their decisions to purchase the Plumbing System or homes and other structures in which the Plumbing System was installed.

194.     Defendants intended to supply these misrepresentations and omissions to Plaintiffs, Class Members and other purchasers, and intended that the recipients act upon them by purchasing the Plumbing System.

195.     Defendants, at the time they made these representations, knew or should have known that these representations were false or were made without knowledge of their truth or falsity.

196.     Plaintiffs and Class Members justifiably and detrimentally relied on these representations and, as a proximate result thereof, have suffered and will continue to suffer damages in an amount to be determined at trial.

197.     Plaintiffs and Class Members incurred monetary losses as a result of Defendants' wrongful conduct because: (a) they would not have purchased the Plumbing System or homes and other structures in which the Plumbing System was installed on the same terms if the true

facts concerning the Plumbing System's defects had been known; and (b) the Plumbing System did not perform as promised.

### TWELFTH CAUSE OF ACTION
**Arizona Consumer Fraud Act, ARIZ. REV. STAT. §§ 44-1521, *et seq*.**

198.     Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

199.     Plaintiffs bring this Cause of Action on behalf of the Arizona Class.

200.     Plaintiffs and Defendants are all "persons" as defined by ARIZ. REV. STAT. § 44-1521(6).  The Plumbing System is "merchandise" as defined by ARIZ. REV. STAT. § 44-1521(5).

201.     The Arizona Consumer Fraud Act proscribes "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby."  ARIZ. REV. STAT. § 44-1522(A).

202.     Defendants have violated and continue to violate the Arizona Consumer Fraud Act, ARIZ. REV. STAT. § 44-1521, *et seq.*, as described at length herein, by disseminating false, deceptive and/or misleading information, by engaging in false, deceptive and/or misleading actions, and by concealing and/or omitting material facts in connection with the sale or advertisement of the Plumbing System.  In connection with the sales and advertisement of the Plumbing System, Defendants intended to and have deceived and misled consumers and continue to deceive and mislead consumers into believing that the Plumbing System is fit for use, meets certain industry standards, and is durable and reliable, as described at length herein.

Defendants have further deceived and misled consumers concerning its warranties and its warranty claims process.

203.    Defendants knew or should have known that its Plumbing System was and is defective and would fail.  Defendants' actions constitute unfair practices and deceptive acts which were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members.

204.    Plaintiffs and the Class relied on Defendants' representations and actions concerning the Plumbing System, including as to Defendants' warranty for the Plumbing System.

205.    Plaintiffs were injured and/or damaged as a direct and proximate result of Defendants' violation of the Arizona Consumer Fraud Act.  As such, Plaintiffs seek relief including, but not limited to, compensatory damages, punitive damages, and/or injunctive relief.

**THIRTEENTH CAUSE OF ACTION**
**Declaratory and Injunctive Relief**

206.    Plaintiffs re-allege and incorporate by reference each preceding and succeeding paragraph.

207.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

208.    There is an actual controversy between Defendants and Plaintiffs concerning:

        a.    whether the Plumbing System was defectively designed thus causing it to prematurely to fail;

        b.    whether Defendants knew or should have known of the defects; and

       c.      whether Defendants failed to warn against the potential unsuitability of the defectively designed Plumbing System.

209.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

210.    Despite the repeated failures of the Plumbing System, Defendants refused to acknowledge that their product is defectively designed.

211.    Accordingly, based on Defendants' failure to act, Plaintiffs seek a declaration that the Plumbing System is defective in its design and manufacture, as alleged herein.  The defective nature of the Plumbing System is material and requires disclosure to all persons who own the Plumbing System.

212.    The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective design and manufacture of the Plumbing System and the reasons for its failure.  There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

213.    Plaintiffs, on behalf of themselves and Class Members, seek a Court declaration of the following:

       a.   All Defendants' Plumbing Systems manufactured have defects resulting in damage to property and the necessity of the removal and replacement of the Plumbing Systems;

       b.   Since Defendants knew of the defects in its Plumbing Systems, the limitations contained in the warranties are unenforceable;

    c.    Defendants shall re-audit and reassess all prior warranty claims concerning the Plumbing System, including claims previously denied in whole or in part; and

    d.    Defendants shall establish an inspection program and protocol to be communicated to Class Members, which will require Defendants to inspect, upon request, a Class Member's home or other structure to determine whether a Plumbing System failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendants, and each of them, and in favor of Plaintiffs, and to award the following relief:

A.    Certification of the Nationwide Class and the Arizona Class, with Plaintiffs appointed as class representatives and the undersigned appointed as Class Counsel;

B.    A declaration that Defendants are financially responsible for notifying all Class Members of the problems with the Plumbing System;

C.    Injunctive relief requiring Defendants to replace and/or repair all Plumbing Systems installed in homes and other structures owned by the Class, and enjoining Defendants from continuing to pursue the policies, acts and practices described in this Complaint;

D.    A declaration that Defendants must disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of the defective Plumbing System, and/or to make full restitution to Plaintiffs and the Class Members;

E.    An award of all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

F.    An award of pre-judgment and post-judgment interest at the maximum rate

allowable by law;

G.      An award of costs and attorneys' fees, as allowed by law, and/or from a common

fund created hereby; and

H.      Orders granting such other and further relief as may be appropriate.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.


Date:  March 5, 2020              By:     *s/Daniel R. Karon*
                                          Daniel R. Karon
                                          **KARON LLC**
                                          700 W. St. Clair Ave., Suite 200
                                          Cleveland, OH 44113
                                          Telephone: (216) 622-1851
                                          Email: dkaron@karonllc.com

                                          Lawrence Deutsch
                                          Jacob M. Polakoff
                                          **BERGER MONTAGUE PC**
                                          1818 Market Street, Suite 3600
                                          Philadelphia, PA 19103
                                          Telephone: (215) 875-3000
                                          Email: ldeutsch@bm.net
                                                 jpolakoff@bm.net

                                          Charles J. LaDuca
                                          Brendan S. Thompson
                                          **CUNEO GILBERT & LaDUCA, LLP**
                                          4725 Wisconsin Ave, NW, Suite 200
                                          Washington, DC 20016
                                          Telephone: (202) 789-3960
                                          Email: charles@cuneolaw.com
                                                 brendant@cuneolaw.com